UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL BRENT, et al.

        Plaintiffs,

  v.

                                  Case No. 13-13128
RICK SNYDER, et al.,                   Honorable Julian Abele Cook, Jr.

        Defendants.

## ORDER

In this action for declaratory and injunctive relief, the Plaintiffs ((1) Nathaniel and Sherrie Brent, in their individual capacities and on behalf of their minor children; (2) their adult children (Aaron, Jamie, and Robert); and (3) their minor children (SB and JB)) have alleged multiple constitutional violations against the Defendants.[1] Currently before the Court is the Defendants' motion to dismiss.

## I.

This litigation arises out of the removal of Brent's minor children from his care and the resulting state court litigation. Brent is the father of above-listed children. On January 17, 2010,

---

[1] The Plaintiffs have identified the following persons as the Defendants in this case: (1) Rick Snyder, in his official capacity as Governor of the State of Michigan; (2) Maura Corrigan, in her official capacity as Director of the Department of Human Services ("DHS"); (3) Steve Arwood, in his official capacity as Director of the Department of Licensing and Regulatory Affairs; (4) Mike Zimmer, in his official capacity as Executive Director of the Michigan Administrative Hearing System; (5) Bill Schuette, in his official capacity as the Michigan Attorney General; (6) Robert P. Young, Jr., in his official capacity as the Chief Justice of the Michigan Supreme Court; and (7) Dwayne A. Haywood, in his official capacity as the Director of Wayne County Department of Human Services ("Wayne County DHS").

Robert Brent, then fifteen, voluntarily left his home and arrived at a Detroit Police station barefoot and wearing only a pair of shorts. DPD Officer Donald Coleman submitted a report to the DHS regarding Robert Brent's flight from his home.

A DHS employee, Mia Wenk, initiated an investigation into Robert Brent's home situation. She visited his home on January 20th and 21st, and thereafter made a referral of the Brent family to the Judson Center[2] on February 16th. On February 16th, Sherri Brent's name was placed on Michigan's Central Registry for "physical neglect." Nathaniel Brent's name was added on Feburary 22nd.

On February 18th, a petition to remove the children from the Brent home was filed with, and subsequently granted by, the Family Division of the Third Judicial Circuit Court for Wayne County ("Family Court"). On the same evening, DPD officers removed all five of the Brent children from their home. The female children were placed in the Davenport emergency shelter, and the male children were placed in the Wolverine emergency shelter. During a preliminary hearing before Referee Nicolas Bobak on the following day, guardians ad litem and counsel were appointed for the Brent parents.[3] Six days later (February 24th), the family court conducted a probable cause hearing, and probable cause was found to authorize the petition of removal.

On March 3rd, a DHS employee, Mia Trice, placed the male children with Noel and Michael Chinavare and the female children with Wendy and Thomas Chinchak. Trice inspected the Brent

---

[2]The Judson Center is a human services agency in Michigan with six regional offices throughout the State.

[3]The order which memorialized this hearing indicates that guardians ad litem were appointed for the parents because they exhibited what Bobak thought to be "unusual behavior throughout the court hearing."

home on March 10th, and thereafter, deemed it to be a suitable home for the children. On March 26th, all of the children were removed from their respective placements and returned to the emergency shelters. The male children were subsequently placed at Methodist Children's Home on April 5th, whereas the female children were placed in a foster home on April 28th under the supervision of the Children's Center of Wayne County.

Pretrial hearings were held on May 3rd and May 10th. Guardians ad litem were appointed for each parent. A jury trial was conducted on May 11th, 12th, and 13th, with the jury eventually finding that one or more statutory grounds existed for the Family Court to exercise jurisdiction over the children. On May 13, 2010, the Family Court ordered that a service plan be completed and given to Brent and his counsel not later than May 27th. At a hearing on June 2nd, a representative of the Children's Center recommended that the children be returned to their home.

The children were then released to their parents, along with a directive that they remain under the supervision of the DHS. On September 10th, upon finding that (1) the Brents had improved the conditions within their home and had cooperated in receiving services, and (2) the children's needs had been met, the jurisdiction of the Family Court over this case was officially terminated.

On October 3, 2010, Nathaniel and Sherri Brent filed requests to have their names removed from the Central Registry. After these requests were denied, a hearing was conducted before an administrative law judge. On February 10, 2012, the administrative law judge denied the Brents' requests. The Brents appealed this decision to the Wayne County Circuit Court on March 26, 2012. Despite the Brents' objections to missing transcripts and an alleged mischaracterization of the administrative record, the Circuit Court affirmed the decision of the administrative law judge. The

Brents filed a motion for reconsideration on May 26, 2013, which was also denied. Thereafter, the Brents filed a timely appeal with the Michigan Court of Appeals. On Oct. 25, 2013, the state appellate court found no merit to the appeal.

Brent commenced a lawsuit in this Court on February 22, 2011, alleging that multiple participants in the state court proceedings violated federal law. On July 22, 2013, the Plaintiffs initiated this second lawsuit for injunctive and declaratory relief.

II.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the plaintiff's well-pleaded allegations as true and should construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

### III.

In their motion, the Defendants contend that this Court should dismiss the Plaintiffs' complaint because of (1) lack of jurisdiction; (2) res judicata; (3) collateral estoppel; (4) abstention; and (5) failure to state a claim upon which relief can be granted.

A.   <u>Jurisdiction</u>

The Defendants contend that this Court lacks jurisdiction over the Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and a lack of standing.

1.   *Rooker-Feldman*

The Defendants first maintain that the Plaintiffs have asked this Court to review and reject orders and judgments issued by Michigan state courts, which is impermissible under the *Rooker-Feldman* doctrine. Under this doctrine, as articulated by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), federal district courts do not have jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The reason for this rule is that appellate review of state-court judgments is vested in the Supreme Court, 28 U.S.C. § 1257, and it follows by "negative inference that . . . such review may not be had in the lower federal courts," *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008); *see also Exxon*, 544 U.S. at 283 ("[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in [the Supreme] Court. Federal district courts . . are empowered to exercise original, not appellate, jurisdiction.").

The *Rooker-Feldman* doctrine is only implicated when a plaintiff complains of being injured by the challenged state court decision itself. *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006). This doctrine is not implicated simply because a party attempts to litigate an issue in a federal court that has already been litigated in a state court. When a "federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. 293 (citations and internal quotation marks omitted). However, if "a plaintiff asserts before a federal district court that a state

court judgment itself was unconstitutional or in violation of federal law," *McCormick*, 451 F.3d at 395, the *Rooker-Feldman* doctrine applies and the federal court lacks jurisdiction to hear the claim. In such cases, the proper course to be followed by the aggrieved party is to appeal through the state-court system and, if necessary, ultimately seek a review by the United States Supreme Court. 18 James Wm. Moore et al., Moore's Federal Practice § 133.30 (Matthew Bender 3d ed. 1997).

In *Pittman v. Cuyahoga County Department of Children and Family Services*, 241 F. App'x 285 (6th Cir. 2007), the plaintiff brought a § 1983 action against a county department of children and family services, alleging that it had (1) violated his Fourteenth Amendment due process and family relationship rights, and (2) acted wantonly, recklessly, and in bad faith during state-court custody proceedings. The Sixth Circuit concluded that his claims were not barred by *Rooker-Feldman* because he did not challenge the custodial order of the state court, but had, instead, challenged the defendants' refusal to recommend that he be given custody of his child. *Id.* at 288. The court noted that "the actual award of custody was not the prerogative of [d]efendants, but that of the juvenile court." *Id.*; *see also Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301 (6th Cir. 2009) (*Rooker-Feldman* did not apply where claims "do not seek review or reversal of the decision of the juvenile court to award temporary custody to the state, but instead focus on the conduct of [county agency employees] *that led up to* the juvenile court's decision to award temporary custody to the County").

The Sixth Circuit was presented with a similar - but distinguishable - situation in *Reguli v. Guffee*, 371 F. App'x 590 (6th Cir. 2010). There, the plaintiff sued the county and several individuals who had worked for the county, the juvenile court, various service programs, and a law enforcement agency. Addressing the activities of the juvenile court referee, the plaintiff alleged that

she had unlawfully conspired with others to orchestrate the ex parte deprivation of her constitutional rights - but the actions that formed the basis of her allegations were the orders that the referee had issued or acts that stemmed directly from those orders. *Id.* at 595-96. The Sixth Circuit determined that these claims were based on injuries arising from the court orders themselves, failed to assert an "independent claim," and were thus precluded. *Id.*

It is clear to the Court that some of the claims raised by the Plaintiffs relate to injuries sustained as a result of the orders and determinations by the state court, and are thus barred under the *Rooker-Feldman* doctrine. Counts Seven, Eight, Twelve, and Twenty through Twenty-Three are direct challenges to state court proceedings and orders. This Court does not have jurisdiction to hear these claims, and they must be dismissed. Contrary to the Plaintiffs' belief, a claim of a due process violation in the state court proceedings does not create an exception to the *Rooker-Feldman* doctrine, because this Court cannot consider whether "a state court judgment itself was unconstitutional or in violation of federal law." *McCormick,* 451 F.3d at 395.

In addition, to the extent that Counts Five, Ten, and Eleven raise as-applied challenges to the procedures used in the state court proceedings below, they also fall within the ambit of the *Rooker-Feldman* doctrine and must be dismissed. However, the allegations contained within these counts that challenge procedures as facially unconstitutional fall outside of the reach of the doctrine and survive. *Fieger v. Ferry*, 471 F.3d 637, 646 (6th Cir. 2006).

### 2. Eleventh Amendment

Next, the Defendants submit that the Plaintiffs' claims are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits in federal court against state officials sued in their official capacity, unless this immunity is expressly waived by the state or Congress,

8

regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984). A limited exception applies to a suit against a state official for prospective injunctive relief. *Id.* at 102. In that case, a federal court has jurisdiction to issue prospective injunctive relief compelling a state official to comply with federal law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Doe v. Wigginton*, 21 F.3d 733, 736-37 (1994). However, a federal court may not enjoin state officials for violations of state law. *Pennhurst*, 465 U.S. at 106; *Freeman v. Michigan Dep't of State*, 808 F.2d 1174, 1179-80 (6th Cir. 1987).

Here, the Plaintiffs request injunctive relief against state officials sued in their official capacities for violations of federal law. These claims are not barred by the Eleventh Amendment. However, in Count Two, the Plaintiffs also raise multiple allegations of violations of state law and state agency policies. This Court may not enjoin the Defendants for failing to follow state law or agency policy, and these claims must be dismissed.

The Defendants contend that the Eleventh Amendment also bars the Plaintiffs' claims because (1) the requested injunctive relief is too broad and (2) the Plaintiffs fail to allege an Article III case or controversy. First, the Court notes that in their response to the Defendants' motion to dismiss, the Plaintiffs assert that they seek injunctive and declaratory relief to cure past, present, and future constitutional violations. Indeed, the Plaintiffs request (1) a declaration that any past orders of the Family Court which were obtained by fraud are now void; and (2) an order requiring Defendant Maura Corrigan to remove the Brents from the Central Registry. Such claims for retrospective declaratory and injunctive relief are barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 105-06 (Supreme Court has "declined to extend the fiction of *Young* to encompass retroactive relief, for to do so would effectively eliminate the constitutional immunity of the

States"); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509-10 (6th Cir. 2008) ("The case law from both the Supreme Court and our court does not bar only retroactive monetary relief, but rather *all* retroactive relief."). Thus, the Court may only consider requests for prospective injunctive and declaratory relief. The Court believes that the second issue of whether the Plaintiffs have fulfilled the "case or controversy" requirement is more properly addressed as a question of standing.

  **3. Standing**

The jurisdiction of a federal court is limited by Article III § 2 of the United States Constitution to specified "cases" or "controversies." An essential component of the "case or controversy" requirement is the doctrine of standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The constitutional requirement of standing mandates that a plaintiff establish three elements: (1) injury in fact; (2) causal connection between the injury and the conduct complained of; and (3) redressability. *Id.* The party seeking to invoke the jurisdiction of the federal court bears the burden of establishing these elements. *Id.*

An injury in fact is "an invasion of a legally protected interest that is (1) "concrete and particularized" and (b) "actual or imminent" not "conjectural or hypothetical." *Id.* (internal quotation marks and citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Thus, in order to establish standing for prospective injunctive relief, a plaintiff must demonstrate "continuing, present adverse effects" or "a sufficient likelihood that he will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

With one exception, the Plaintiffs are unable to allege the necessary injury required for

standing to request prospective declaratory and injunctive relief. First, the Plaintiffs are unable to allege a future injury that is real and immediate. Any possibility that the Brents will again be subject to an unconstitutional investigation or unconstitutional Family Court proceedings are purely speculative. Thus, as to the allegations in Counts One through Twelve, the Plaintiffs are no more entitled to an injunction than any other citizen, and these claims must be dismissed.

The Plaintiffs maintain that they have alleged a continuing adverse effect because the challenged Family Court order serves as a justification, in part, for the inclusion of Nathaniel and Sherri Brent on the Central Registry. The Court must reject this proposition. The Family Court order is final and cannot be overturned by this Court even if the relevant procedures are later found unconstitutional. *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 837-38 (6th Cir. 2001). Thus, the Family Court order itself cannot serve as a "continuing, present adverse effect." *Id.*

Sherri and Nathaniel Brent allege a continuing injury from their listing on the Central Registry. The Court agrees that this qualifies as an injury in fact for the purposes of standing. Thus, these two plaintiffs have standing to raise Counts Thirteen through Nineteen, which challenge the Central Registry procedures. The children, on the other hand, are barred from challenging the Central Registry because they (1) are not listed on the registry and (2) cannot show that they are likely to be listed in the future. As a result, they cannot demonstrate an injury in fact required for standing. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). As to the Brent children, Counts Thirteen through Nineteen must be dismissed.

**B. Res Judicata**

The Defendants next contend that the Plaintiffs' claims are barred by the doctrine of res

judicata. As the only claims for which this Court has jurisdiction to consider are those of Sherri and Nathaniel Brent for Counts Thirteen through Nineteen, the Court will restrict its analysis to these claims. The doctrine of res judicata requires that "'[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.'" *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010) (quoting *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). Under Michigan law, a subsequent legal action is barred if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. at 817. "Res judicata 'bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'" *Id.* (quoting *Abbott*, 474 F.3d at 331). The burden of proof is borne by the party asserting res judicata. *Id.*

Here, Counts Thirteen through Nineteen challenge the constitutionality of Michigan's Central Registry. According to documents attached to the Plaintiffs' complaint, these same claims were raised by Nathaniel and Sherri Brent in proceedings below and rejected by the Circuit Court. (Compl., Attachs. 32, 33). The Michigan Court of Appeals subsequently found that these claims have no merit. *Brent v. Wayne Cnty Dep't Human Servs.*, No. 316996 (Mich. Ct. App. Oct. 25, 2013). Thus, these claims were decided on the merits. The defendant in the prior state court proceeding was the Wayne County Department of Human Services, a branch of a state agency. The Court finds that under Michigan law this agency is in privity with the other state defendants in this case. *Adair v. State*, 680 N.W.2d 386, 397 (Mich. 2004) ("[A] perfect identity of the parties is not required, only a 'substantial identity of interests' that are adequately presented and protected by the first litigant."). Any claims regarding the Central Registry that were not actually raised in those

proceedings could have been raised. As a result, the elements of res judicata have been met and Nathaniel and Sherri Brent are barred from raising Counts Thirteen through Nineteen.

The Plaintiffs contend that res judicata should not attach to the below proceedings because they were not afforded "a full and fair opportunity to litigate." *Abbott*, 474 F.3d at 331. "[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982). Due process requires notice and the opportunity to be heard. *Abbott*, 474 F.3d at 331. A review of the state court documents from the below proceedings indicates that the Brents were afforded the opportunity to raise their claims regarding the Central Registry, including the lack of transcripts on appeal, to multiple courts, including the Michigan Court of Appeals, which found no merit to any of them. Thus, this Court cannot say that the Brents were not given "a full and fair opportunity" to litigate the issues presented in their complaint.

As all of the Plaintiffs' claims are barred due to lack of jurisdiction or by operation of the doctrine of res judicata, this Court need not consider the Defendants' remaining arguments.

IV.

For the reasons that have been set forth above, the Court grants the Defendants' motion to dismiss the Plaintiffs' complaint (ECF No. 19).

IT IS SO ORDERED.

Date: September 21, 2014	s/Julian Abele Cook, Jr.
	JULIAN ABELE COOK, JR.
	U.S. District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 21, 2014.

	s/ Kay Doaks
	Case Manager

14